LONGVIEW FIBRE COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11035–76.    Filed December 7, 1978.

*John T. Piper* and *Terrence P. Murphy,* for the petitioner.
*Charles L. Eppright,* for the respondent.

## OPINION

SCOTT, *Judge:* Respondent determined deficiencies in petitioner's Federal income taxes in the amounts of $354,228.07 and $2,030,062.96 for the taxable years ended October 31, 1972, and October 31, 1973, respectively. Petitioner has conceded the correctness of some of the adjustments respondent made in the notice of deficiency, leaving for our decision only the proper amount of commission income of petitioner's domestic international sales corporation (DISC) subsidiary, Longview Fibre Co. International, on sales of logs for petitioner.

A DISC is not taxable on its profits, but under section 995, I.R.C. 1954,[1] the parent of the DISC subsidiary is in its current year taxable on one-half of the income of the DISC subsidiary and the tax on the other one-half is deferred. When the income of the DISC subsidiary consists of commissions on qualified sales for the parent, the parent in computing its taxable income is entitled to deduct in the year of the sale the entire commission income of the DISC. Section 994(a)[2] provides for the inter-

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.

[2] SEC. 994. INTER-COMPANY PRICING RULES.

(a) IN GENERAL.—In the case of a sale of export property to a DISC by a person described in section 482, the taxable income of such DISC and such person shall be based upon a transfer price which

company pricing rules to be used in computing the income of the DISC.[3] The parties do not differ with respect to the right of petitioner to deduct, in computing its taxable income for each year here in issue, the commission income of its DISC or that this commission income is to be computed under section 994(a).[4] The difference between the parties is solely as to what constitutes the "combined taxable income" of petitioner and its DISC from

would allow such DISC to derive taxable income attributable to such sale (regardless of the sales price actually charged) in an amount which does not exceed the greatest of—

(1) 4 percent of the qualified export receipts on the sale of such property by the DISC plus 10 percent of the export promotion expenses of such DISC attributable to such receipts.

(2) 50 percent of the combined taxable income of such DISC and such person which is attributable to the qualified export receipts on such property derived as the result of a sale by the DISC plus 10 percent of the export promotion expenses of such DISC attributable to such receipts, or

(3) taxable income based upon the sale price actually charged (but subject to the rules provided in section 482).

[3]Sec. 1.993–1(d)(1), Income Tax Regs., provides as follows:

Sec. 1.993–1 Definition of qualified export receipts.

(d) *Related and subsidiary services*— (1) *In general.* Qualified export receipts of a DISC include gross receipts from services furnished by such DISC which are related and subsidiary to any sale or lease (as described in paragraph (b) or (c) of this section) of export property by such DISC or with respect to which such DISC acts as a commission agent, provided that such DISC derives qualified export receipts from such sale or lease. Such services may be performed within or without the United States.

Under this regulation "qualified export receipts" includes sales made by the DISC as a commission agent for its parent.

Sec. 1.994–1(a)(1), Income Tax Regs., provides for computation of commission income under sec. 994(a) as follows:

Sec. 1.994–1 Inter-company pricing rules for DISC's.

(a) *In general*—(1) *Scope.* In the case of a transaction described in paragraph (b) of this section, section 994 permits a person related to a DISC to determine the allowable transfer price charged the DISC (or commission paid the DISC) by its choice of three methods described in paragraph (c)(2), (3), and (4) of this section: The "4 percent" gross receipts method, the "50–50" combined taxable income method, and the section 482 method. Under the first two methods, the DISC is entitled to 10 percent of its export promotion expenses as additional taxable income. When the gross receipts method or combined taxable income method is applied to a transaction, the Commissioner may not make distributions, apportionments, or allocations as provided by section 482 and the regulations thereunder. For rules as to certain "incomplete transactions" and for computing combined taxable income, see paragraph (c)(5) and (6) of this section. Grouping of transactions for purposes of applying the method chosen is provided by paragraph (c)(7) of this section. The rules in paragraph (c) of this section are directly applicable only in the case of sales or exchanges of export property to a DISC for resale, and are applicable by analogy to leases, commissions, and services as provided in paragraph (d) of this section. For rules limiting the application of the gross receipts method and combined taxable income method so that the supplier related to the DISC will not incur a loss on transactions, see paragraph (e)(1) of this section. Paragraph (e)(2) of this section provides for the applicability of section 482 to resales by the DISC to related persons. Paragraph (e)(3) of this section provides for the time by which a reasonable estimate of the transfer price (including commissions and other payments) should be paid. The subsequent determination and further adjustments to transfer prices are set forth in paragraph (e)(4) of this section. Export promotion expenses are defined in paragraph (f) of this section. Paragraph (g) of this section has several examples illustrating the provisions of this section. Section 1.994–2 prescribes the marginal costing rules authorized by section 994(b)(2).

[4]Sec. 994(b)(1) authorizes the Commissioner to prescribe rules consistent with sec. 994(a) for the application of the section in the case of commissions.

qualified export sales. The precise issue is the cost to be used for the logs sold in determining this income. This issue arises because petitioner owns the land on which it grows timber and from which it cuts the logs exported and sold by its DISC for it on a commission basis, and petitioner has elected to consider the cutting of its timber as a sale or exchange of timber under section 631.

All of the facts have been stipulated and are found accordingly.

Petitioner is a corporation with its principal office in Longview, Wash. It keeps its books and files its tax returns on the basis of a fiscal year ended October 31. For each of its fiscal years 1972 and 1973, petitioner filed its Federal corporate income tax return with the Internal Revenue Service Center in Ogden, Utah.

Petitioner's principal business is the manufacture of paper and related products derived from wood fiber. For use in its manufacture, petitioner grows timber, principally Douglas fir and western hemlock trees. Typically, this timber requires approximately 40 to 80 years to mature to the size for optimum marketing. Petitioner manages its timber crop on a sustained yield basis, coordinating harvest with growth so that timber can be indefinitely harvested from petitioner's lands. During the last two decades, petitioner's timber harvest has had a market value in excess of the amount that could be realized by petitioner from processing the timber in its own manufacturing operations. Consequently, petitioner has followed the practice of marketing its timber harvest at its highest market value and acquiring the wood fiber needed for its manufacturing operations from other sources. The timber cut in each of petitioner's fiscal years 1972 and 1973 was sold in the same year when it was cut.

During its fiscal years 1972 and 1973, petitioner had in effect the election provided by section 631(a). Accordingly, petitioner treated the cutting of its timber in those years as a sale of such timber and determined its gain on the basis of the difference in the fair market value of its timber at the beginning of each fiscal year and its adjusted basis in the timber. Sec. 631(a). It reported the gain so computed as capital gain under sections 1231, 1222(3), 1222(11), and 1201(a). In computing its ordinary income from the sale of logs on its tax return for each of its fiscal years 1972 and 1973, petitioner used as its costs of goods

sold log costs computed by using the fair market value of the timber at the beginning of each year.

During its fiscal years 1972 and 1973, petitioner exported products produced in the United States to foreign countries. In the exporting operations, petitioner's domestic international sales corporation (DISC) subsidiary, known as Longview Fibre Co. International, acted as commission agent for petitioner's export sale of logs. At all times pertinent to the issue in this case, Longview Fibre Co. International has been a domestic international sales corporation, or DISC, as defined by section 992(a). Under a written agreement between petitioner and its DISC subsidiary, the DISC was entitled to commissions "equal to the maximum amount permitted to be received by a DISC company under the inter-company pricing rules of section 994 of the Internal Revenue Code of 1954."

During its taxable years ended October 31, 1972, and October 31, 1973, petitioner's DISC subsidiary earned a commission on petitioner's export of logs equal to the maximum amount allowable under the inter-company pricing rules of section 994. Using the 50-percent of combined taxable income method as provided in section 994(a)(2), petitioner computed its DISC's commissions as follows:

| | TYE Oct. 31— | |
| --- | --- | --- |
| | 1972 | 1973 |
| Qualified export receipts from the export of sale logs | $2,697,283 | $14,271,045 |
| Adjusted basis standing timber (later to be exported as logs) | (32,088) | (73,158) |
| Other costs attributable to exported logs: | | |
| Amortization—roads | (35,267) | (86,303) |
| Contractor costs | (723,484) | (2,368,730) |
| Administrative costs | (395,430) | (1,184,186) |
| Income attributable to export receipts | 1,511,014 | 10,558,668 |
| DISC commission under sec. 994(a)(2): | | |
| Petitioner's method | 755,507 | 5,279,334 |

Respondent computed the amount of the DISC's commission by subtracting from the qualified export receipts the fair market value of the standing timber on the first day of the taxable year. The effect of respondent's adjustment is to decrease the amount of income attributable to export receipts

and, consequently, decrease the amount of the commission payable to the DISC subsidiary computed under section 994(a)(2), which petitioner is entitled to deduct in computing its taxable income.[5] According to respondent's computation, for the year ended October 31, 1972, petitioner's DISC subsidiary would have realized no income attributable to export receipts and would, therefore, not have been entitled to any DISC commission under section 994(a)(2).[6] For the year ended October 31, 1973, according to respondent's computation, petitioner's DISC subsidiary realized income attributable to export receipts in the amount of $1,251,971 and, under section 994(a)(2), was entitled to a commission of half of this amount, or $625,986.

On its Federal corporate income tax return for each year here in issue, petitioner deducted the amount of the log commission paid to its DISC subsidiary.

Section 631(a)[7] allows a taxpayer to elect to consider the

---

[5] In the notice of deficiency respondent explains his adjustment as follows:

| | 7210 | 7310 |
|---|---|---|
| "(e) Log commission expense | $755,507.00 | $4,653,348.00 |

"It is determined that in computing your log commission expenses pertaining to logs sold to your wholly-owned Domestic International Sales Corporation, Longview Fibre International, you failed to include in cost of goods sold the gain realized under section 631(a) of the Internal Revenue Code as required under the provisions of Section 994 of the Internal Revenue Code.

"Accordingly, your log commission expense is overstated by the above amounts. See Exhibit A for the computation hereof."

The computation shown on exhibit A is as follows:

| | | 7210 | | 7310 |
|---|---|---|---|---|
| 1. Log sales—export | | $2,697,283 | | $14,271,045 |
| 2. Cost of logs (see line 7 above)[line 7 shows sec. 631(a) value of logs] | $1,699,243 | | $9,379,855 | |
| 3. Other costs: | | | | |
| Amortization—roads | 35,267 | | 86,303 | |
| Contractor costs | 723,484 | | 2,368,730 | |
| Administrative costs | 395,430 | | 1,184,186 | |
| 4. Total cost of logs— transfer price ( * * * ) | | 2,853,424 | | 13,019,074 |
| 5. Gain (loss) (line 1 less 4) CTI[1] | | (156,141) | | 1,251,971 |
| 6. Log commission payable—50% of gain, if any, on line 6 [sic] | | 0 | | 625,986 |
| 7. Log commissions deducted | | 755,507 | | 5,279,334 |
| 8. Adjustment—Difference of line 6 and 7 | | 755,507 | | 4,653,348 |

[1] CTI = combined taxable income

[6] The parties have stipulated that if respondent's position in this case is sustained, the DISC commission may be recomputed in a Rule 155 computation under a subsection of sec. 994(a), other than sec. 994(a)(2), if advantageous to petitioner.

[7] SEC. 631. GAIN OR LOSS IN THE CASE OF TIMBER, COAL, OR DOMESTIC IRON ORE.

(a) ELECTION TO CONSIDER CUTTING AS SALE OR EXCHANGE.— If the taxpayer so elects on his return for a taxable year, the cutting of timber (for sale or for use in the taxpayer's trade or business) during

cutting of timber as a sale or exchange of a section 1231 asset. Added to the Code by the Revenue Act of 1943, the predecessor of section 631 was intended to remove tax considerations as a factor in the decision of a timber grower whether to sell his land or his standing timber or to harvest the timber himself. Prior to enactment of this section, income realized from the cutting of timber was taxed as ordinary income even though much of the income might have been attributable to timber growth over a substantial period of time. An outright sale of the land with the standing timber or a sale of the uncut timber, however, could result in a capital gain to the taxpayer. To eliminate the discrimination against taxpayers who choose to cut their own timber, Congress provided for an election, pursuant to which a taxpayer who desires to sell his own timber may treat the cutting of timber as a sale or exchange. See S. Rept. 627, 78th Cong., 1st Sess. (1943), 1944 C.B. 973, 993. The gain realized under section 631 is the excess of the fair market value of the timber (determined as of the first day of the taxable year in which the timber is cut) over its adjusted basis for depletion in the hands of the taxpayer. The third sentence of section 631(a) provides that if the section 631 election is made, the fair market value of the timber "shall thereafter be considered as the cost of such cut timber to the taxpayer for all purposes for which such cost is a necessary factor."[8] Section 1.631–1(e)(1), Income Tax

---

such year by the taxpayer who owns, or has a contract right to cut, such timber (providing he has owned such timber or has held such contract right for a period of more than 6 months before the beginning of such year) shall be considered as a sale or exchange of such timber cut during such year. If such election has been made, gain or loss to the taxpayer shall be recognized in an amount equal to the difference between the fair market value of such timber, and the adjusted basis for depletion of such timber in the hands of the taxpayer. Such fair market value shall be the fair market value as of the first day of the taxable year in which such timber is cut, and shall thereafter be considered as the cost of such cut timber to the taxpayer for all purposes for which such cost is a necessary factor. If a taxpayer makes an election under this subsection, such election shall apply with respect to all timber which is owned by the taxpayer or which the taxpayer has a contract right to cut and shall be binding on the taxpayer for the taxable year for which the election is made and for all subsequent years, unless the Secretary or his delegate, on showing of undue hardship, permits the taxpayer to revoke his election; such revocation, however, shall preclude any further elections under this subsection except with the consent of the Secretary or his delegate. For purposes of this subsection and subsection (b), the term "timber" includes evergreen trees which are more than 6 years old at the time severed from the roots and are sold for ornamental purposes.

[8]See also sec. 1.631–1(d)(3), Income Tax Regs., which provides as follows:

(3) The fair market value as of the beginning of the taxable year of the standing timber cut during the year shall be considered to be the cost of such timber, in lieu of the actual cost or other basis of

Regs.,[9] provides that when a taxpayer has made an election under section 631(a), gain realized from the sale of the products of the timber, whether in the form of logs, lumber, or manufactured products, shall be accorded ordinary income treatment. In determining the cost of the products sold, the fair market value of the timber shall be treated as its costs, in lieu of the actual cost or other basis of the timber.

In 1971, as part of the Revenue Act of that year (H.R. 10943, 92d Cong., Pub. L. 92–178), Congress enacted the DISC provisions. These provisions were enacted to provide tax incentives for domestic firms to increase their exports and to remove discrimination against United States corporations that choose to export through United States corporations, rather than through foreign subsidiaries. See H. Rept. 533, 92d Cong., 1st Sess. (1971), 1972–1 C.B. 498, 529. The vehicle chosen for these purposes was the deferral of profits realized by a new type of corporation, the domestic international sales corporation, or DISC. A DISC is a domestic corporation, the income of which is primarily derived from export transactions and which acts as the selling arm of a domestic corporation producing products for export. See sec. 992(a). A DISC, itself, is not subject to taxation. Sec. 991. Instead, the tax is imposed at the shareholder level. It was the intent of the statute to encourage exports by generally taxing its shareholder currently on only one-half of a DISC's profits whether or not actually distributed, and not taxing the other half to the shareholder until it is actually distributed. Sec. 995(b)(1)(F).

Section 994(a) sets forth the rules for determining the permissible profits which a DISC may earn as the result of sales of products acquired from its parent corporation. Section 994(a) refers to *sales* to a DISC by a related supplier, but section 994(b)(1) specifically empowers the Secretary to prescribe

---

such timber, for all purposes for which such cost is a necessary factor. See paragraph (e) of this section.

[9]Sec. 1.631–1(e)(1), Income Tax Regs., provides as follows:

(e) *Computation of subsequent gain or loss.* (1) In case the products of the timber are sold after cutting, either in the form of logs or lumber or in the form of manufactured products, the income from such actual sales shall be considered ordinary income. When the election under section 631(a) is in effect, the cost of standing timber cut during the taxable year is determined as if the taxpayer had purchased such timber on the first day of the taxable year. Thus, in determining the cost of the products so sold, the cost of the timber shall be the fair market value on the first day of the taxable year in which the standing timber was cut, in lieu of the actual cost or other basis of such timber.

regulations consistent with the provisions of section 994(a) in the case of commissions, rather than sales. Petitioner's DISC subsidiary sold logs for export on a commission basis. Section 1.994–1(d)(2), Income Tax Regs., in essence provides that the amount of income that can be earned by a DISC acting as a commission agent is to be determined as if the DISC's supplier had sold the export property to the DISC and the DISC in turn had sold it to a third party.

Under the commission agreement in effect between petitioner and its DISC subsidiary, petitioner was obligated to pay a DISC commission equal to the maximum amount permitted to be received by a DISC subsidiary under the inter-company pricing rules of section 994. Petitioner determined that the "50 percent of the combined taxable income attributable to qualified export receipts" method of computing the DISC commission as authorized by section 994(a)(2)[10] resulted in the maximum permissible commission. Section 1.994–1(c)(6), Income Tax Regs., sets forth the rules governing computation of the combined taxable income. Subsection (ii) provides:

(ii) Cost of goods sold shall be determined in accordance with the provisions of sec. 1.61–3. See sections 471 and 472 and the regulations thereunder with respect to inventories. *With respect to property to which an election under section 631 applies (relating to cutting of timber considered as a sale or exchange), cost of goods sold shall be determined by applying sec. 1.631–1(d)(3) and (e) (relating to fair market value as of the beginning of the taxable year of the standing timber cut during the year considered as its cost).* [Emphasis supplied.]

Respondent contends that his method of computation of petitioner's DISC subsidiary's income attributable to qualified export receipts is in accordance with section 1.994–1(c)(6)(iii) and section 1.631–1(d)(3) and (e), Income Tax Regs. See nn. 8 & 9.

Petitioner argues that respondent in his computation has overlooked the portion of section 1.631–1(d)(3), Income Tax Regs., which states "for which such cost is a necessary factor." Petitioner contends that "such cost" is not a necessary factor in determining the combined taxable income of it and its DISC attributable to "qualified export receipts." Petitioner argues that "receipts" are not produced by cutting timber and that to apply the regulations as respondent does have the effect of

[10]See n. 2 *supra.*

double taxation of the long-term increment in the value of the timber. We find no merit to petitioner's contention. "Qualified export receipts" in this case basically are the sales price of the logs sold on the export market. To determine the combined taxable income derived from these sales (that is, the income without splitting the profits between petitioner and its DISC) it is necessary to reduce the receipts from sales by the costs of the logs sold and a part of that cost is the timber cost. Therefore, the "timber cost" is a necessary factor to determine the "combined taxable income" referred to in section 994(d)(2). Respondent's computation is clearly correct under the provisions of section 1.631–1(d)(3) and (e) and section 1.994–1(c)(6), Income Tax Regs.

Petitioner contends that if we construe these regulations as respondent contends they should be construed, section 1.994–1(c)(6), Income Tax Regs., is invalid because it is inconsistent with the purposes of section 631 and the DISC provisions. Petitioner argues that respondent's method of computation denies Longview Fibre the full benefit of the combination of the section 631 and DISC incentives, since only the gain derived from the timber processing, and not the gain realized as a result of timber growth, is thereby eligible for the export incentive provided by the DISC provisions. This treatment, petitioner argues, is contrary to the purpose of the DISC provisions. In our view, petitioner is seeking in effect to reduce its ordinary income by an excessive commission to its DISC computed by using as cost of goods sold its depletion basis in the timber rather than the 631(a) cost.[11] In effect, petitioner is seeking to have an extra

---

[11]The following example is prepared on the listed assumptions:

(1) Petitioner's only operations in the year were its harvesting of timber and selling of logs through its DISC;

(2) Total receipts from selling the logs were $14,100;

(3) Petitioner's only expenses were the cost of the timber and its sales commission to its DISC;

(4) Petitioner's depletion basis in the timber was $100 and the fair market value of the timber as of the beginning of the taxable year was $9,100.

Pursuant to its election under sec. 631, petitioner, in computing its own income, is entitled to treat the $9,000 difference in its depletion basis in the timber and the fair market value of the timber at the beginning of the taxable year as capital gain.

*Petitioner's Ordinary Income Before Deduction*
*of Its DISC Commission*

| | |
|---|---:|
| Receipts from export sales of logs | $14,100 |
| Cost of logs (fair market value of timber beginning of year) | 9,100 |
| Ordinary income (gross profit from sales of logs) | 5,000 |

benefit from its section 631 election until such time, which may be far into the future, as it is taxable on the deferred half of its DISC income. In our view, such an extra benefit is not one of the incentive benefits of either section 631 or the DISC provisions. We find section 1.994–1(c)(6)(ii), Income Tax Regs., as interpreted by respondent, to be valid.

Petitioner argues that in effect having an extra benefit from its election under section 631 is not inconsistent with the intent of the DISC provisions. Petitioner contends that some assets may at the same time constitute qualified export assets within the meaning of section 993(b)(2),[12] the gains from which are eligible for DISC deferral, and section 1231 assets, the gains from which are taxed at capital gains rates. While it is true that assets in the nature of section 1231 assets fall within the ambit of "qualified export assets" in section 993(b)(2), the intercompany pricing rules of section 994[13] do not apply to the sales of all qualified export assets. Rather, they apply only to a particular type of qualified export asset known as "export

---

*The DISC Commission to be Deducted as Computed by Petitioner*

| | |
|---|---:|
| Qualified export sales | $14,100 |
| Cost of sales (depletion basis of timber) | 100 |
| Combined taxable income of petitioner and DISC | 14,000 |
| DISC commission (50 percent of combined taxable income of petitioner and DISC) | 7,000 |
| Petitioner's ordinary income from log sales as computed by petitioners ($5,000 minus $7,000) | (2,000) |

The income of the DISC which will be deferred is $3,500 (50 percent of the $7,000 commission income). Petitioner's dividend income from its DISC is $3,500. The result is that petitioner reduces its ordinary income before its dividend from its DISC to a $2,000 loss by using as cost in computing its own income the fair market value of the timber, but in computing its and its DISC's combined taxable income by using its depletion basis of the timber. In this manner petitioner, in computing its ordinary income, obtains a deduction through its DISC commission deduction of a part of the amount it has treated in computing its income as capital gain. The result is in effect a double benefit from the election under sec. 631.

[12]Sec. 993(b)(1) and (2) provides as follows:

(b) QUALIFIED EXPORT ASSETS.—For purposes of this part, the qualified export assets of a corporation are—

    (1) export property (as defined in subsection (c));

    (2) assets used primarily in connection with the sale, lease, rental, storage, handling, transportation, packaging, assembly, or servicing of export property, or the performance of engineering or architectural services described in subparagraph (G) of subsection (a)(1) or managerial services in furtherance of the production of qualified export receipts described in subparagraphs (A), (B), (C), and (G) of subsection (a)(1);

[13]See n. 2 *supra*.

property," a term defined by section 993(c).[14] The section 993(c) definition of export property does not include assets in the nature of section 1231 property. Consequently, petitioner's argument that Congress contemplated the combination of capital gains from the sale of section 1231 assets with DISC deferral is incorrect.

Section 631(a) and sections 1.631–1(d)(3), 1.631–1(e), and 1.994–1(c)(6)(ii), Income Tax Regs., clearly provide that in computing the commissions payable to its DISC subsidiary petitioner must include, as the costs of goods sold, the fair market value of timber as of the first day of the taxable year. We consider these regulations to be valid. We therefore hold for respondent on the only issue before us. However, because of other adjustments,

*Decision will be entered under Rule 155.*

---

[14]Sec. 993(c) provides as follows:

(c) EXPORT PROPERTY.—

(1) IN GENERAL.—For purposes of this part, the term "export property" means property—

(A) manufactured, produced, grown, or extracted in the United States by a person other than a DISC,

(B) held primarily for sale, lease, or rental, in the ordinary course of trade or business, by, or to, a DISC, for direct use, consumption, or disposition outside the United States, and

(C) not more than 50 percent of the fair market value of which is attributable to articles imported into the United States.

In applying subparagraph (C), the fair market value of any article imported into the United States shall be its appraised value, as determined by the Secretary or his delegate under section 402 or 402a of the Tariff Act of 1930 (19 U.S.C., sec. 1401a or 1402) in connection with its importation.